UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ERIE INSURANCE EXCHANGE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-867-JDT-TAB |
| | ) | |
| KEVIN T. WATTS, INC. d/b/a THE | ) | |
| BENEFITS NETWORK, and KEVIN T. | ) | |
| WATTS, an individual,, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON PLAINTIFF'S MOTIONS FOR JUDGMENT ON THE PLEADINGS (Documents #43 & #44)[1]

Plaintiff, Erie Insurance Exchange ("Erie"), filed this action seeking a declaratory judgment that it owes no duty to defend or indemnify the Defendants, Kevin Watts and Kevin Watts, Inc., d/b/a The Benefits Network (collectively "Watts"), with respect to a class action lawsuit brought under the federal Telephone Consumer Protection Act ("TCPA").  Specifically, the class action is brought pursuant to  47 U.S.C. § 227, which prohibits unsolicited advertisements being sent to a telephone facsimile machine.  Erie issued seven insurance policies to Watts from 1999 to 2005.  Its declaratory judgment complaint is in nine counts and asserts various exclusions and exceptions to coverage under its policies and asks that the court find that it has no duty to defend or indemnify Watts.  The insurer maintains that a review of the class action complaint, the policies at

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.

issue, its complaint in this action, Watts' answer and counterclaim and the answer Erie filed to the counterclaim, the appropriateness of a judgment on the pleadings is apparent.  Because this court finds that the injury alleged in the underlying class action had to be expected or intended by Watts and that the policies at issue are not intended to cover a violation of privacy rights such as is alleged in the class action, judgment on the pleadings will issue in favor of Erie on Count VII of its Complaint, insofar as the court finds that it had no duty to defend Watts.[2]  Without a duty to defend, Erie could not have acted in bad faith when it denied a defense to Watts and therefore judgment in its favor on that part of Watts' counterclaim asserting bad faith and seeking punitive damages is appropriate as well.

## A.    THE REVIEWING STANDARD

Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed but within such time as not to delay the trial."  A motion for judgment on the pleadings is subject to the same standards as a Rule 12(b)(6) motion to dismiss. The Court must accept all well-pled allegations as true and must view those allegations in the light most favorable to the non-moving party. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir.1998).  Thus, dismissal is proper only if it appears "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which

---

[2] For reasons not well explained by Erie, and certainly not understood by the court, the insurer has stated in its reply brief that it has brought its motion for judgment on the pleadings, with respect to its complaint, only as to the issue of its duty to defend.  Consequently, the court will address only that issue.

would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-6 (1957).  In deciding a motion under Rule 12(c), the Court may consider only the pleadings, that is, "the complaint, the answer, and any written instruments attached as exhibits."  *Northern Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452.  In this case the insurance contracts and the underlying complaint constitute appropriately considered exhibits.

Under Indiana law, the interpretation of an insurance contract is a matter of law for the courts to determine, making a resolution by dispositive motion particularly appropriate.  *See Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind.1992).  The court must enforce an unambiguous insurance contract according to its plain meaning, even if that limits the coverage available.  *Schenkel & Schultz, Inc. v. Homestead Ins. Co.,* 119 F.3d 548, 550 (7th Cir. 1997).  Pursuant to Indiana law, ambiguity in an insurance contract exists when it is susceptible of more than one interpretation and reasonably intelligent people would honestly differ as to its meaning.  *Millspaugh v. Ross*, 645 N.E.2d 14, 16 (Ind. App. 1994).  However, merely because the parties advance different interpretations does not necessarily mean that there is an ambiguity.  *Id.*

In this instance the allegations of another lawsuit are as important, or more so, than the allegations of the complaint at hand.  This is so because under Indiana law, which both parties agree applies in this diversity action, an insurer is to determine whether it owes a duty to defend by examining the allegations of the underlying complaint.  *Transamerica Insurance Services v. Kopko*, 570 N.E.2d 1283, 1285 (Ind. 1991).  If proof of any of the allegations could lead to coverage, then a duty to defend exists regardless of the merits of the allegations, thus making the duty to defend

broader than the duty to indemnify. *Federal Ins. Co. V. Stroh Brewing Co.*, 127 F.3d 563, 566 (7th Cir. 1997). While appellate court decisions from Indiana have been less than consistent in their descriptions of this standard and their adherence to *Kopko's* clear dictate that the allegations of the underlying lawsuit be the extent of consideration when analyzing whether or not a defense duty exists, federal courts must rely on the pronouncements of the Indiana Supreme Court in applying Indiana law. *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 302, 309 n.8 (7th Cir. 1998).

## B.     THE UNDERLYING CLASS ACTION LAWSUIT

In the case at bar, the underlying lawsuit is brought in the Marion County Superior Court by an Indiana corporation, Gold Seal Termite and Pest Control Company ("Gold Seal"), on behalf of itself and all others who received unsolicited "junk faxes" from Watts. Watts is alleged to have sent Gold Seal an unsolicited fax on February 21, 2003 which advertised the availability of Watts' services. The underlying complaint, which was filed on February 17, 2005, goes on to allege that over the course of the previous four years, Watts engaged in sending unsolicited facsimile advertisements to numerous other businesses and individuals. Gold Seal's suit seeks the minimum $500 in statutory damages for each unsolicited fax sent by Watts.

**C.    THE INSURANCE POLICIES**

There were two commercial general liability ("CGL") policy forms issued by Erie to Watts over the course of the relevant time period.  Generally, each of the policies provides time-period specific coverage for damages because of bodily injury, property damage, personal injury or advertising injury for which the law holds Watts responsible. The first CGL policy form issued to Watts contains an exclusion for  "injury or damage expected or intended from the standpoint of anyone we protect."  Also, if the damages result from bodily injury or property damage, they "must be caused by an occurrence." An "occurrence" is defined nearly identically in both policy forms as  "an accident, including continuous or repeated exposure to [substantially] the same general harmful conditions."

"Advertising injury" has several recognized meanings under the policies, the only one applicable to the discussion here is "injury arising out of oral or written publication of material that violates a person's right of privacy."  The second form sets forth a single definition for "personal and advertising injury" with subparts, the only applicable one being that which describes publication of materials which invade someone's privacy.  It also has an exclusion similar to the first policy form, except the exclusion requires knowledge on the part of the insured that its act or acts violate the rights of another in order to exclude personal and advertising injury.

**D.     ANALYSIS**

**1.  Duty to Defend**

Of the four types of damages covered by the Erie policies, bodily injury is the only one which the parties agree is not part of any claim in the underlying lawsuit. That leaves property damage and personal and advertising injury as the coverages which are at issue here.   Watts argues that the underlying lawsuit sufficiently sets forth a claim for property damage because the unsolicited fax used Gold Seal's and other putative plaintiffs' fax machine time and supplies.  It also contends that personal and advertising injury is a part of the underlying lawsuit because the TCPA was enacted to protect privacy interests and consequently a violation of that statute constitutes an invasion of privacy and potential liability premised thereon.  Erie maintains that neither property damage nor advertising injury has been alleged in the underlying lawsuit and since there is no mention of an intrusion upon privacy rights either, no coverage is invoked by the lawsuit.  Further, Erie maintains that exclusions to coverage would apply even if the underlying lawsuit was interpreted as asserting a claim for covered damages.

**a.  property damage**

Both CGL policy forms issued to Watts require the "loss of use" type of property damage to be the result of an "occurrence" in order to be covered damage.  According to the policy definitions, in order to be an "occurrence" the incident at issue must be an "accident."  While the policy does not define accident, the Indiana Supreme Court has said that implicit in the meaning of accident is "the lack of intent."  *Auto-Owners Ins. Co.*

*v. Harvey,* 842 N.E.2d 1279, 1283 (Ind. 2006).  Watts argues that in sending the fax it

intended only to gain business from Gold Seal.  However, it clearly intended to coax that

business from Gold Seal by making use of Gold Seal's fax machine without its

permission, causing it to print out a copy of Watts' advertisement, all the while depleting

Gold Seal's ink, paper and useful machine life.

The court finds, as a matter of law, that Watts intended for Gold Seal and others

to bear the bulk of Watts' advertising costs by employing the so-called "fax blast"

method of alerting potential clients to its services.  In doing so it knew that it was

causing the targets of its telefaxed communications to temporarily lose the use of their

own fax machines and deplete their ink and paper supplies.  No other reasonable

conclusion can be reached.

The requirement that "loss of use" damage be the result of an "occurrence" also

dovetails with an exclusion in each of the two policy forms which excepts coverage for

property damage "expected or intended from the standpoint of anyone we protect."

Again, it is the intent of the insured that triggers the exception.  There is no coverage if

the damage suffered by the third party was intended by the insured.  So, even if it could

be said that the underlying lawsuit seeks damages for property damage resulting from

an occurrence, because Watts clearly intended for Gold Seal and others to absorb

those property losses, the exception is triggered.

### b.  personal and advertising injury

The first of Erie's CGL policy forms, issued to Watts to cover  three single year

-7-

periods beginning February 15, 1999, includes in its definition of "personal injury",

injuries arising out of an invasion of privacy.  Violation of a person's right to privacy is

also the essence of the applicable portion of the definition of "advertising injury" in that

policy form.  Erie argues that such an injury or privacy right violation is not alleged by

Gold Seal.   In fact, according to Erie, there is no allegation in the underlying lawsuit of

any privacy violation on the part of Watts, only an allegation of a statutory violation.

        Both parties spend a number of briefing pages discussing whether or not the

TCPA was intended to remedy privacy violations.  This court is not impressed with

Erie's attempt to distinguish Congress' attempt to stop unsolicited phone calls and

facsimile transmissions from the notion that the same are unwanted invasions of

privacy.  However, without deciding whether a breach of Gold Seal's privacy rights is at

issue in the underlying lawsuit, there is still an unscalable obstacle to personal injury or

advertising injury coverage under this first policy form.

        In this policy form, Erie excludes from coverage, personal injury or advertising

injury that was "expected or intended from the standpoint of anyone we protect."  In

other words, the same exclusion that applied to property damage also applies to

personal injury and advertising injury.  Therefore, no coverage applies where Watts

chose to send an uninvited fax to a private telephone number in hopes that it would

gather the attention of the targeted recipient.  The invasion of the recipient's privacy was fully intended.

The second CGL policy form sold to Watts combined personal injury and advertising injury for purposes of distinguishing coverages and defined the two in a single multi-part definition.  The part of the definition at issue here is "the publication, in any manner, of material that violates a person's right to privacy."  Unlike the first policy form, the "expected or intended injury" exclusion in this second CGL policy form, which was in effect from February 15, 2002 through May 1, 2005, does not apply to personal and advertising injury unless the insured acts with knowledge that it is violating the rights of another and that its acts would inflict such injury.  Perhaps because of the distinction between intent and knowledge and the perceived need for evidence outside the pleadings to establish Watts knowledge at the time it sent the facsimiles, Erie has not specifically argued for the application of this exclusion.  Therefore, the question of whether or not the underlying lawsuit can be said to raise the issue of an invasion of privacy is preeminent under the second policy form.  As indicated previously, much has been said by both parties with regard to whether or not the TCPA is meant to remedy violations of privacy.  However, as Judge Easterbrook opined in *American States Ins. Co. v. Capital Associates of Jackson County, Inc.*, 392 F.3d 939 (7th Cir. 2004), "the question is not how the word 'privacy' was used in the debates that led to § 227(b)(1)(C), or in its implementing regulations, but what the word means in this insurance policy."  *Id.* at 942.

*American States* presented nearly the same situation as faces this court.  A class

action lawsuit was filed, pursuant to 47 U.S.C. § 227, against Capital Associates of Jackson County, which allegedly sent unsolicited advertisements via telefax to JC Hauling and others. *Id.* at 940. American States Insurance Company insured Capital Associates, and its policy provided liability coverage for "advertising injury." *Id.* Unlike the second policy form in the case at bar, the "expected or intended injury" exclusion applied to advertising injury in the policy at issue in *American States. Id.* At the district court level, part of the insurer's unsuccessful argument for denying coverage was that the exclusion applied. *Id.* However, the district court judge ruled that an unsolicited fax invades a recipient's privacy and thus an advertising injury, as defined in the policy, had been asserted and a defense to the lawsuit was owed.[3] *Id.* The Court of Appeals disagreed.

In writing for the Court of Appeals, Judge Easterbrook examined in detail the meaning of the word "privacy." He opined that "the two principal meanings are secrecy and seclusion, each of which has multiple shadings." *Id.* at 941. A desire to conceal a condition, past event or status through the assertion of a right of privacy draws upon the desire for secrecy. *Id.* Whereas, the assertion of privacy in an effort to ward off uninvited solicitors or onlookers is founded on the notion of a right to seclusion. *Id.* The insurer, American States, argued that its coverage dealt with secrecy rather than seclusion. *Id.* The court found that the language of the policy, "publication of material

---

[3] In *American States* the insurer argued that it owed neither a defense nor coverage for the class action, but it provided a defense to the lawsuit while reserving its rights. *American States*, 392 F.3d at 940. Consequently there were procedural issues and problems in that case that the court is not faced with here.

that violates a person's right of privacy," was consistent with tort protection against bringing attention to a private figure, revealing an embarrassing and otherwise secret situation or casting someone in a false light through publication of true but misleading facts. *Id.* at 940-41.

The Court of Appeals noted that the district court had not delved into the meaning of privacy as that word appears in the insurance policy, choosing instead to ignore the insurer's attempt to distinguish secrecy concerns from seclusion interests. *Id.* at 942.  In reaching the conclusion that the CGL policy did not cover the type of claim being pursued by JC Hauling the Seventh Circuit emphasized two points.  First, corporations are not alive and generally do not have an interest in seclusion.  *Id.*  Citing *Restatement (Second) of Torts* § 652I Comment c, the court pointed out that "[m]ost states hold that business entities lack privacy interests."  *Id.*  Second, the appellate court emphasized that the policy covers a "publication" that violates a right of privacy and "publication" only matters in the case of secrecy concerns.  *Id.*  "In a seclusion situation, publication is irrelevant."  *Id.*  In conclusion, Judge Easterbrook reasoned, "§ 227(b)(1)(C) condemns a particular means of communicating an advertisement, rather than the contents of that advertisement - while an advertising injury deals with informational content."  *Id.* at 943.

This court finds the analysis in the *American States* decision to be on point in this case.  That conclusion is buttressed by the fact that the Indiana Supreme Court has also discussed the *Restatement (Second) of Torts* § 652I and the tort of invasion of privacy, and reached a similar conclusion with respect to a corporation lacking the

necessary legal  interests to pursue an invasion of privacy claim.  *See Felcher v. University of Evansville*, 755 N.E.2d 589, 593-95 (Ind. 2001).  Accordingly, there is no basis for coverage under the "personal and advertising injury" portion of Erie's second policy form.  Further, Erie has no duty to defend against any of the claims raised in the underlying lawsuit.

### 2.  Counterclaim

The court is now left with the second of Erie's motions, which seeks a judgment on the pleadings on a portion of the counterclaim filed by Watts.  Watts' counterclaim asserts that Erie's refusal to provide indemnity or a defense is a breach of the insurance contract.  It goes on to assert that the failure to provide a defense is in bad faith and that Watts is entitled to an award of punitive damages.  Erie has moved for judgment on the bad faith and punitive damages claims.  This court has determined that Erie has no duty to defend Watts with respect to the action filed by Gold Seal, *a fortiori* Watts' claim of bad faith and pursuit of punitive damages must fail as well.

### E.     CONCLUSION

The Erie policies are not intended to cover the type of damage or injury caused by the type of TCPA violation alleged by Gold Seal in the underlying lawsuit. Accordingly, Erie has no duty to provide Watts with a defense to that lawsuit.  In addition, Erie has not acted in bad faith by denying Watts a defense and can not be held liable for punitive damages.  Erie's Motion for Judgment on the Pleadings **(Document #43)** will be GRANTED to the extent that it is entitled judgment in the form of a

declaration that it owes no duty to defend Watts against the claims arising out of the class action lawsuit brought in state court by Gold Seal.  Erie's Motion for Judgment on the Pleadings on the Bad Faith and Prayer for Punitive Damages **(Document #44)** will also be GRANTED, insofar as it is entitled to judgment in its favor on that portion Watts' counterclaim which asserts bad faith and seeks punitive damages.

Given the limited nature of the claims addressed by the Plaintiffs' motions, additional claims remain to be resolved in this litigation.  Therefore, a final judgment on the claims addressed herein will not be entered until all other claims in this case reach disposition.

ALL OF WHICH IS ORDERED this 30th day of May 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Bryce H. Bennett Jr.
RILEY BENNETT & EGLOFF LLP
bbennett@rbelaw.com

Michael John Duffy
TRESSLER SODERSTROM MALONEY & PRIESS
mduffy@tsmp.com

Phil L. Isenbarger
BINGHAM MCHALE, LLP
pisenbarger@binghammchale.com

Irwin B. Levin
COHEN & MALAD LLP
ilevin@cohenandmalad.com

Anna E. Muehling
BINGHAM MCHALE
amuehling@binghammchale.com

Eric S. Pavlack
COHEN & MALAD LLP
epavlack@cohenandmalad.com

Todd Stewart Schenk
TRESSLER SODERSTROM MALONEY & PRIESS
tschenk@tsmp.com

James P. Strenski
BINGHAM MCHALE LLP
jstrenski@binghammchale.com

Kathleen Ann Sweitzer
TRESSLER SODERSTROM MALONEY & PRIESS
ksweitzer@tsmp.com

Laura Kay Taylor
RILEY BENNETT & EGLOFF LLP
ltaylor@rbelaw.com